In re Rosemary Pierce
WRIGHT, Debtor.

NORWEST FINANCIAL LEASING,
INC., Movant,

v.

Rosemary P. WRIGHT, Roger
Schlossberg, Trustee,
Respondent.

Bankruptcy No. 85–A–1672.
Motion No. 86–M–0010A.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

April 23, 1986.

Karl Wiegand, Camp Springs, Md., for debtor/respondent.

Paul Donovan, Baltimore, Md., for movant Norwest Financial Leasing, Inc.

Roger Schlossberg, Hagerstown, Md., Trustee.

## MEMORANDUM OF DECISION

### (Motion to Modify Stay)

PAUL MANNES, Bankruptcy Judge.

This matter is before the court on the motion to modify the stay brought by Norwest Financial Leasing, Inc. ("Norwest"), the purported holder of a lien on the debtor's 1977 Mercury automobile. The trustee and Norwest have stipulated that the sole issue is whether Norwest has a perfected security interest in the automobile. Both the debtor and the trustee urge that Norwest is unsecured and therefore, without security, has no right to relief from the stay and should be dealt with through the distribution made to all unsecured creditors.

The relationship between the debtor, Rosemary Pierce Wright, and Norwest goes back to June 4, 1984, when she borrowed $2,778.29 and promised to repay it in 36 monthly installments of $109.00. Debtor's original schedules filed with her Chapter 7 petition on September 24, 1985, omitted any mention of Norwest or any debt to it. Debtor thereafter filed a motion to dismiss her Chapter 7 petition, which motion was later withdrawn. Debtor then filed an amended Schedule A–2 which showed Norwest as the holder of a non-purchase money security interest in her household goods and the subject automobile, and an amended Statement of Intention Re: Secured Consumer Debts filed pursuant to 11 U.S.C. § 521(2) which indicated her intention to redeem the automobile from the lien of the creditor, which redemption would be made under 11 U.S.C. § 722. The debtor also filed an amended Schedule B–4 which claimed the automobile exempt to the extent of $900.

The debtor did not testify at the lift stay hearing. The only live witness was Charles Wysocki, the financial manager of Norwest, who was familiar with the trans-

action. His testimony is uncontradicted. He testified that he made the loan subject to a security agreement which he and the debtor signed. He also took possession of the debtor's District of Columbia Certificate of Title to her Mercury automobile to enable him to make the appropriate lien filing. He produced evidence of Norwest's payment on June 8, 1984, of a $2 recording fee to the Recorder of Deeds of the District of Columbia. Also admitted into evidence was a photocopy of a District of Columbia Certificate of Title which Wysocki testified was returned to him by D.C. with the certification that,

> the following liens have been recorded in [the Assistant Director's] office for the above-described motor vehicle or trailer:

| LIEN NO. | REC DATE | KIND | AMOUNT | DATED | FAVOR OF |
|----------|----------|------|--------|-------|----------|
| G813348 | 9-20-84 [1] | FS | $2778.29 | 6-4-84 | Norwest |

At some point, the debtor moved from the District of Columbia to Maryland and went to Norwest to obtain the original Certificate of Title in order to retitle the automobile in Maryland. Because the debtor was three months behind in her payments, Wysocki did not give her the title, but did show it to her with Norwest's lien stamped thereon. Thereafter, the debtor went to the District of Columbia Transportation Systems Administration and obtained a copy of her title. The Certificate of Title given to her did not show the existence of the lien, although the court finds as a fact that the lien was filed with the Recorder of Deeds pursuant to *D.C.Code Ann.* § 40–1007 (1981).[2] The debtor then applied to the Maryland Department of Transportation for a Maryland title and tags. Her application for Certificate of Title indicated that as of August 21, 1985, there was no lien in place and in fact "no lien shown on record Aug 21 1985" was stamped on the duplicate D.C. Certificate of Title which she included with her application.

In preparing for this hearing, the responsible individuals at Norwest realized what had happened and went to the D. C. Transportation Systems Administration to present their copy of the D. C. Certificate of Title and the receipt for the lien filing which appeared to have been lost in the records of the District of Columbia. The D. C. officials were persuaded that the filing had in fact taken place and on March 3, 1986, issued a duplicate Certificate of Title which was backdated to show a lien on record as of the date the lien arose, June 4, 1984. Meanwhile, however, the debtor had gotten a Maryland Certificate of Title issued on August 22, 1985, which was clear of any secured parties and on September 24, 1985, had filed her petition under Chapter 7.

At the outset, the court notes the provisions of Maryland Transportation Code Annotated § 13–202(c):

> § 13–202. *Perfection of security interest—In general.*
>
> (c) *Prior security interest on vehicle brought into State from another jurisdiction.—*
>
> (1) If a vehicle already is subject to a security interest when brought into this

---

1. The court assumes that this date is a typographical error and should read "6–20–84," which would be consistent with the date stamped on the back of the check which Norwest tendered for the recording fee.

2. § 40–1007. *Entry of lien on previously issued certificate.*

    When it is desired to have a lien entered on a certificate theretofore issued, the instrument and the certificate shall be presented to the Recorder in the office of the Director and upon the payment of the necessary fees to the representative of the Recorder of Deeds of the District of Columbia in the office of the Director the Recorder shall accept the instruments for recording and unless he has a card covering said motor vehicle or trailer the Director shall stamp a card in the manner set forth in § 40–1006. The Recorder shall enter the lien information on the certificate in the space hereinbefore mentioned and on said card and shall deliver or mail the certificate to the record holder of the 1st unsatisfied lien shown thereon or his representative.

State, the validity of that security interest in this State is determined by the law (including the conflict of law rules) of the jurisdiction where the vehicle was located when the security interest attached, subject to the provisions of this subsection.

(2) If, at the time the security interest attached, the parties to the transaction understood that the vehicle would be kept in this State, and if, within 30 days after the security interest attached, the vehicle was brought into this State for purposes other than transportation through this State, the validity of the security interest in this State is determined by the law of this State.

(3) If, before the vehicle was brought into this State, the security interest was perfected under the laws of the jurisdiction where the vehicle was located when the security interest attached, the following rules apply:

(i) If the name of the secured party is shown on an existing certificate of title issued by that jurisdiction, the security interest continues perfected in this State; and

(ii) If the name of the secured party is not shown on an existing certificate of title issued by that jurisdiction and if the law of that jurisdiction does not provide for certificates of title disclosing security interests, the security interest continues perfected in this State for 4 months and thereafter if, within the 4–month period, it is perfected in this State, but this security interest also may be perfected in this State after the expiration of the 4–month period, in which case perfection dates from the time of perfection in this State.

(4) If, before the vehicle was brought into this State, the security interest was not perfected under the law of the jurisdiction in which the vehicle was located when the security interest attached, it may be perfected in this State, in which case perfection dates from the time of perfection in this State.

In view of these provisions, particularly §§ 13–202(c)(1) and (3)(i), the court finds that Norwest's status must be determined by looking at its status under the motor vehicle lien law of the District of Columbia, D.C.Code Annotated §§ 40–1001 *et seq.* (1981). As found above, Norwest followed the procedures set out in *D.C.Code Ann.* § 40–1007. The ultimate question presented is, who shall pay the price for the erroneous D. C. Certificate of Title issued to the debtor August 21, 1985, which was not cured by the appropriate District of Columbia authority until after the filing of the debtor's bankruptcy petition and after the debtor had obtained a clear Maryland Certificate of Title? Two of the parties to this case are innocent. Norwest followed the procedure required by D.C.Code Annotated § 40–1007. For his part, the trustee is not estopped from denying Norwest's status because of the debtor's actions or knowledge. *See generally In re Parkwood,* 461 F.2d 158, 162–63 (D.C.Cir.1971).[3] However, the trustee has the burden of proof in this matter, there being no issue as to the debtor's equity in the property. 11 U.S.C. § 362(g). The court finds that the trustee, who barely attempted to controvert Norwest's evidence, has failed to meet the burden.

The bottom line of this matter is that the debtor appears to have perjured herself when she certified in her application for a Maryland Certificate of Title that the automobile was not subject to a lien. She was able to take advantage of a clerical error on the part of the D.C. government and get a facially clear title which she then uttered to Maryland officials. But this has no significance apart from the possible crime. In fact, one of the ironies of this case is that the debtor has turned around and acknowledged Norwest's secured status, by way of amendment to her schedules, in order to redeem the automobile. It may be that,

**3.** This conclusion usually applies to estoppel arguments raised in a lien avoidance action brought by the trustee, such as in *Parkwood.* The court finds that it applies by analogy in the case at bar, where the trustee's position and arguments are the same as would be made if the trustee had brought an avoidance action under, e.g., § 549(a) of the Bankruptcy Code.

through this ruling in favor of Norwest, the debtor is getting what she thinks she wants. In any case, Norwest did exactly what it was supposed to do. The trustee is in the position to carry these facts through to their logical conclusion.

An order will be entered in accordance with the foregoing.